1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

13
14

JEROME MARKAY,                                    CV F   02 6173 OWW LJO P

15                        Plaintiff,

        v.                                         FINDINGS AND RECOMMENDATIONS
16                                                 REGARDING MOTIONS FOR SUMMARY
                                                   JUDGMENT (Docs. 63, 68.)

17   B. YEE, et. al.,

18                        Defendants.
                                                /
19

20           Jerome Markay ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis

21   in this civil rights action filed pursuant to 42 U.S.C. § 1983.

22   **I.  RELEVANT PROCEDURAL HISTORY**

23           Plaintiff filed the instant action on September 24, 2002.  On November 21, 2002, the

24   Court issued an Order dismissing the Complaint with leave to amend.  The Court found that the

25   Complaint stated cognizable claims against Defendants Yee, Merrifield , Andrews and Longoria.

26   Plaintiff informed the Court on December 18, 2002, that he wished to proceed on the cognizable

27   claims only.  Thus, on January 2, 2003, the Court issued Findings and Recommendations that the

28   action proceed only on the cognizable claims.  The District Court adopted the Findings and

1    Recommendations on January 2, 2003.

2         A Motion to Dismiss the action on the basis that Plaintiff had filed three actions which

3    had been dismissed under 28 U.S.C. § 1997(g) was filed on April 14, 2003, by Defendants.  The

4    Court issued Findings and Recommendations that the Motion be denied on September 8, 2003.

5    The District Court adopted the Findings and Recommendations on January 7, 2005.  An Answer

6    was filed on January 14, 2005, by Defendants.

7         On October 4, 2005, Defendants filed a Motion for Summary Judgment.  Plaintiff filed a

8    Motion for Summary Judgment on October 6, 2005.  Defendants filed their Opposition to

9    Plaintiff's Motion for Summary Judgment on October 12, 2005.  On October 17, 2005, Plaintiff

10   filed an Opposition to the Defendant's Motion for Summary Judgment.

11   **II.  SUMMARY JUDGMENT STANDARD**

12        Summary judgment is appropriate when it is demonstrated that there exists no genuine

13   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

14   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

15         always bears the initial responsibility of informing the district court
16         of the basis for its motion, and identifying those portions of "the
           pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
17         demonstrate the absence of a genuine issue of material fact.

18   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

19   burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

20   made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

21   on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

22   upon motion, against a party who fails to make a showing sufficient to establish the existence of

23   an element essential to that party's case, and on which that party will bear the burden of proof at

24   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

25   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

26   circumstance, summary judgment should be granted, "so long as whatever is before the district

27   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

28   satisfied."  Id. at 323.

1   If the moving party meets its initial responsibility, the burden then shifts to the opposing

2   party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.</u>

3   <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

4   In attempting to establish the existence of this factual dispute, the opposing party may not

5   rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

6   form of affidavits, and/or admissible discovery material, in support of its contention that the

7   dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must

8   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

9   suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W.</u>

10  <u>Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that

11  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

12  the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

13  In the endeavor to establish the existence of a factual dispute, the opposing party need not

14  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

15  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16  trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

17  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18  <u>Matsushita</u>, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963

19  amendments).

20  In resolving the Motion for Summary Judgment, the Court examines the pleadings,

21  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

22  any. Rule 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at

23  255, and all reasonable inferences that may be drawn from the facts placed before the court must

24  be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (*citing* <u>United States v.</u>

25  <u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out

26  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

27  inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D.

28  Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

1      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

2 show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

3 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

4 issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (*citation omitted*).

**III.  SUMMARY OF COMPLAINT**

      On or around August 31, 2000, a gassing incident occurred in the area where Plaintiff and

another inmate, Jeffrey Harnden, were housed.   According to the Complaint, inmate Harden

informed Defendant Longoria that Plaintiff was the individual who gassed him and requested to

see the MTA.   The MTA arrived sometime later.

      On October 3, 2000, Plaintiff states he was in the law library when he was informed by

Defendant Merrifield, an R.N., that inmate Harnden had requested Plaintiff be tested for disease.

The Complaint states that Defendant Merrifield coordinated the test and that Plaintiff's medical

record showed that prison staff were "prepared to use force" to administer the test if necessary.

Defendant Andrews later visited Plaintiff and explained that he had a Doctor's Order requiring

the testing of Plaintiff and that he was prepared to use force if necessary.  Plaintiff then took the

voluntarily.

      On October 4, 2000, Plaintiff filed an inmate appeal stating that the testing was

involuntary.  The appeal was denied on the informal and first and second formal levels but was

partially granted on the third level.

      On August 20, 2002, Plaintiff submitted a request to review his medical file. When he

received the requested documents, he learned that he had Hepatitis C, that the test was ordered by

Brian Yee, Chief Medical Officer, and was returned back to the prison on October 6, 2000.

Plaintiff states that at some point he went to the prison pharmacy to have medication refilled and

no one mentioned to him his condition of having hepatitis.  Plaintiff states also that he was never

given a rules violation report for gassing inmate Harnden but was given a 128B informative

chrono saying that a rules violation report formerly written, was in error.  Finally, Plaintiff

"notes" that he learned that the prison's public health nurse released the results of his "mental

health ordered hepatitis results" to inmate Harnden.

**IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    *A.  UNDISPUTED FACTS[1]*

1. At times relevant to this action, Plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at California State Prison - Sacramento ("CSP-Corcoran").

2. At times relevant to this action, Defendant B. Yee, M.D., was employed by the CDCR as the Chief Medical Officer ("CMO") of CSP-Corcoran.

3. At times relevant to this action, Defendant N. Merrifield was employed by the CDCR at CSP-Corcoran as the Public Health Nurse.

4. At times relevant to this action, Defendant J. Andrews was employed by the CDCR at CSP-Corcoran in the position of Facility Captain.

5. At times relevant to this action, Defendant Longoria was employed by the CDCR at CSP-Corcoran in the position of Correctional Officer.

6. As the public health nurse at CSP-Corcoran, Defendant Merrifield addressed all public health issues in the institution, especially as they pertained to contagious diseases, such as tuberculosis, hepatitis, and HIV.[2]

7. On or around August 31, 2000, Defendant Merrifield was notified of a gassing incident in the area where Plaintiff and another inmate, Jeffrey Harnden, were housed.

8. Harnden was housed in a cell next to Plaintiff's cell in Facility 4B2.

9. Defendant Merrifield spoke with inmate Harnden, the alleged victim of the gassing incident, who was concerned about contracting a contagious disease from the liquid gassing substance, which was believed to be mixed with fecal matter, because some of it splattered on his face.

10. Inmate Harnden wanted tests done on Plaintiff, who Harnden alleged was the

---

[1]The following facts are undisputed solely for the purpose of Defendant's Motion for Summary Judgment.

[2]Although Plaintiff states that disputes these facts, his disagreement is with Defendants investigation of the incident. Thus, the fact is undisputed.

perpetrator of the gassing incident, to determine whether Plaintiff was infected with some contagious disease.

11. Defendant Merrifield advised inmate Harnden to submit his request for testing of Plaintiff on a form called "Report of Request and Decision for HIV Testing" and, in accordance with customary practice in situations where a person may have been exposed to an infectious disease, Merrifield took a sample of Harnden's blood for testing.

12. After speaking with inmate Harnden, Merrifield spoke with Longoria, one of the officers on duty where inmates Markay and Harnden were housed, who confirmed that fecal matter had been splattered around the cells of inmates Harnden and Markay.

13. Defendant Merrifield attempted to interview Plaintiff, but he refused to speak with her, stating that nothing had happened and there was nothing to talk about.

14. On or around September 1, 2000, Defendant Merrifield received inmate Harnden's written request.

15. Within approximately one week after receiving inmate Harnden's written request, Defendant Merrifield reviewed Plaintiff's central file to determine the presence of factors, e.g., history of intravenous drug use, length of time in prison, tattoos acquired in prison, etc., that would tend to increase the risk of his transmission of contagious diseases, and she found that some risk factors were present.

16. Defendant Merrifield reviewed Plaintiff's medical records to see if he had ever tested positive for any contagious disease.

17. Defendant Merrifield also called the CDCR's Public Health Division for guidance on whether Penal Code Section 4501.1 applied to situations in which there was probable cause to believe that an inmate had gassed another inmate and the

answer to her inquiry was in the affirmative.[3]

18. Defendant Merrifield reported her findings to James Pendleton, M.D. who was in charge at the time, in the absence of Defendant Yee, M.D., the Chief Medical Officer.[4]

19. On October 3, 2000, Defendant Merrifield received a memorandum from Dr. Pendleton, ordering that Plaintiff be tested for Hepatitis A, B, and C, on a voluntary or non-voluntary basis, pursuant to Penal Code Section 4501.1.

20. From October 3, 2000, to October 4, 2000, Dr. Yee was on vacation and not on duty at CSP-Corcoran.

21. When Dr. Yee served as Chief Medical Officer at CSP-Corcoran, it was his practice to appoint one of the physician's reporting to him to be in charge in his absence.

22. Dr. Yee was not informed of the gassing incident of August 30, 2000, that is alleged in this action, until he was served with the Complaint.

23. Dr. Yee did not order that Plaintiff be tested for hepatitis on a voluntary or involuntary basis; Dr. Yee did not instruct anyone to order such testing of Plaintiff on his behalf; and he had no discussions with anyone at CSP-Corcoran about such an order.

24. Dr. Yee did not author or, at the time it was written, have any knowledge of the memorandum, dated October 3, 2000, signed by James Pendleton, M.D.

25. Immediately upon receiving the written order, Defendant Merrifield arranged for Plaintiff to be brought to the medical clinic, and she showed him the order from Dr. Pendleton.

26. After Plaintiff read the order, he initially stated that he would not be tested

---

[3]Plaintiff disagrees with this statement, however, the disagreement is with the applicable penal code and not to whether or not Defendant Merrifield contacted the public health division as she states. Thus, this fact is undisputed.

[4]Again, Plaintiff disputes this fact but provides no evidence to the contrary. Accordingly, the fact is undisputed.

without a court order, but then submitted to the testing when it was made clear to him by Captain Andrews that he would be forced to submit to the test if need be.

27. Andrews role in this case was minimal as he merely did what he was told to do.

28. It took approximately two minutes to draw the blood sample from Plaintiff, and caused him no pain.

29. The blood sample was sent to the laboratory, which returned the report on or about October 6, 2000.

30. Although Dr. Yee did not order that Markay be tested for hepatitis, it is his opinion as a medical doctor, that testing was appropriate under the circumstances.

31. According to the laboratory report of the lbood sample taken from Markay on October 3, 2000, he was infected with hepatitis C at the time of the alleged gassing incident.

32. Defendant Merrifield received and reviewed the report.

33. After learning that Plaintiff had tested positive for hepatitis C, in accordance with well established practice, Defendant Merrifield tested Harden again for this disease.

34. Medicinal treatment may be appropriate for severe chronic active hepatitis C when AST and ALT (two enzymes found in blood cells) are sufficiently elevated; however, a person diagnosed with hepatitis C is not necessarily prescribed treatment because of the negative side effects of Interferon - the usual medicinal treatment for hepatitis C.

35. The higher the elevation of AST and ALT the greater the potential benefits of the medicinal treatment for hepatitis C; when AST and ALT levels are normal or only marginally above normal, the benefits of medicinal treatment do not outweigh the risks of the treatment.

36. Even when AST and ALT levels reach triple digit levels (e.g., in the 300's, 400's, 500's), medicinal treatment is still not indicated without first determining whether the patient's liver is already irreparably damaged (in which case, medical

treatment would be of no benefit) or whether the liver is inflamed (as the absence of any inflammation would indicate no benefit since no further damage to the liver will occur without inflammation).

37. When AST and ALT levels are seriously elevated, a liver biopsy is the usual procedure used to assess the condition of the patients liver.

38. According to a laboratory report in Plaintiff's medical file of tests done on or around November 9, 2000, his AST level was 35, which is within the normal range; and his ALT level was 64, which is higher than normal but not sufficiently high to warrant medicinal treatment.

39. On or around June 27, 2001, Plaintiff was given another liver panel which indicated that his AST level was 41, just outside the normal range; and his ALT level was 57, which was lower than it was on November 9, 2000.

40. The AST and ALT levels of Plaintiff were not sufficiently high to warrant medicinal treatment or a liver biopsy.

41. Plaintiff filed an inmate appeal complaining about being forced to take a hepatitis test pursuant to Penal Code Section 4501.1, and requesting he be shown the provision that justified the order that he be tested.

42. In the first formal level response to Plaintiff's appeal, Defendant Merrifield informed Plaintiff that according to CDCR's Public Health Office, the Penal Code Section applied to suspected gassing of inmates as well as employees or peace officers.

43. Plaintiff appealed to the second level of review which was denied.

44. Plaintiff pursued the appeal to the Director's level, and the appeal was granted at this level holding that Penal Code Section 4501.1 applies only to the "battery upon the person of any officer or employee of the state."

45. Plaintiff never filed a grievance based on allegations that he failed to receive treatment for his hepatitis.

//

### B.   CLAIMS FOR RELIEF

#### 1.   Subject Matter Jurisdiction

Defendants argue in their Motion for Summary Judgment that the Court lacks subject matter jurisdiction because the facts stated do not allege a federal constitutional claim. However, as noted by Plaintiff, he filed a federal civil rights action and used the federal civil rights form.  In addition, the Court previously determined that the Complaint, which is subject to notice pleading only, and the facts alleged, stated cognizable federal claims for relief. Accordingly, the Court finds it has subject matter jurisdiction over the action.

#### 2.   Supervisory Liability - Dr. Yee

Generally, there is no respondeat superior liability under § 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002), *quoted in* Bell v. Clackamas County, 341 F.3d 858, 867 n. 3 (9th Cir.2003). "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001).  In other words, supervisors "can be held liable 'only if they play an affirmative part in the alleged deprivation of constitutional rights,' [i.e. by] 'set[ting] in motion a series of acts by others ..., which he knew or reasonably should have known, would cause others to inflict the constitutional injury.' " Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir.2003) (*citations omitted*) (*quoting* Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991)).

Defendants present evidence that Dr. Yee was on vacation and not on duty at the time the memorandum requiring testing of Plaintiff was issued, that Dr. Yee was unaware of the testing until he was served with the Complaint, and/or that Dr. Yee did not order that Plaintiff be tested. (Yee Declaration "Decl." at ¶ 3-6.)  Defendants also present evidence that the memorandum was authored by Dr. Pendleton, who was in charge during the absence of Dr. Yee.  (Exh. 2, Evidence Supporting "Evidence." )  The Court finds that Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The

burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In Opposition, Plaintiff points to no evidence demonstrating that Dr. Yee played any role relating to the events occurring on August 31, 2000.  Based on the lack of evidence, the Court finds Plaintiff has failed to create a disputed issue of fact and will recommend summary judgment be granted in favor of Dr. Yee.

### 3. Eighth Amendment - Medical Care

Defendant also notes that Plaintiff conceded in his Deposition that he did not file an Administrative Grievance with respect to his Eighth Amendment claim.  (Exh. 6, p. 10:7-25.) Pursuant to the Prison Litigation Reform Act ("PLRA") of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).  Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001).  "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' " Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 739 n. 5).  Exhaustion must occur prior to filing suit. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir.2002).  Plaintiff may not exhaust while the suit is pending. McKinney, 311 F.3d at 1199-1201. The failure to exhaust nonjudicial administrative

remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  Wyatt, 315 F.3d at 1119 (*citing* Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (*per curiam*)).

Generally, where, as here, it is clear from the face of the Complaint and Plaintiff's admission that he failed to exhaust his administrative remedies, dismissal of the Eighth Amendment claim is appropriate.  42 U.S.C. § 1997e(a); Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid grounds for dismissal . . . .").  However, as Defendants do not move for dismissal on exhaustion grounds and instead, address Plaintiff's Eighth Amendment claim on the merits, Defendants have waived exhaustion as a defense. See Wyatt v. Terhune, 315 F.3d 1108, 1117-18, n. 9 (9th Cir.2003) (exhaustion is an affirmative defense that can be waived).

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (*quoting* Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (*citation omitted*)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate  indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (*citing* Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Defendants present evidence that Plaintiff was given medical attention as a result of his positive hepatitis test by the administration of a liver panel on November 9, 2000, and June 27, 2001, to discover his AST and ALT levels and determine whether any treatment was needed. (Exh. 4, 5, Evidence.)  The evidence provided shows that Plaintiff's levels were within the normal range and did not require medical treatment.  (Id.; Yee Decl. ¶ 12-16; Merrifield Decl., ¶ 25-27.)  The Court finds that Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Although Plaintiff filed an Opposition, Plaintiff points to no evidence demonstrating that his condition required medical treatment such that a denial constituted deliberate indifference or that he was injured as a result of the lack of treatment. As noted above, the evidence shows that Plaintiff's received further testing as a result of the hepatitis testing and required no further medical treatment.  Accordingly, the Court finds Plaintiff has failed to meet his burden and summary judgment on the Eighth Amendment allegation is warranted.

### 4.  Involuntary Administration of Blood Test

Prisoners, despite their conviction and confinement, do not forfeit all constitutional rights.  Bell v. Wolfish, 441 U.S.  520, 545, 99 S.Ct. 1861, 1877 (1979).  "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259 (1987).  Nevertheless, prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security.  O'Lone v. Estate of

1  Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987); Bell v. Wolfish, 441 U.S. at 546-47,

2  99 S.Ct. at 1877-88.

3         In Turner v. Safley, the Supreme Court set forth the standard for evaluating prisoners'

4  constitutional claims.  The Court held that "when a prison regulation impinges on inmate's

5  constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

6  interests." Turner v. Safley, 482 U.S. at 89, 107 S.Ct. at 2261.  The Court identified four factors

7  to guide reviewing courts in applying this test: 1) the existence of a valid, rational connection

8  between the prison regulation and the legitimate governmental interest put forward to justify it;

9  2) the existence of alternative means of exercising the right that remain open to prison inmates;

10  3) the impact that accommodation of the asserted constitutional right will have on guards and

11  other inmates, and on the allocation of prison resources generally; and ) the absence of ready

12  alternatives as evidence of the reasonableness of the regulation.  Id at 89-91, 107 S.Ct. at 2261-

13  63.   The Court emphasized that courts are to accord great deference to prison officials'

14  assessments of their interests.  Id. at 84-85.

15         Turner applies whenever "the needs of prison administration implicate constitutional

16  rights." Washington v. Harper, 494 U.S. 210, 224, 110 S.Ct. 1028, 1038 (1990).  Thus, courts,

17  including the Ninth Circuit, have applied the Turner test to prisoner's Fourth Amendment claims,

18  as well as their First and Fourteenth Amendment claims.  See, Thompson v. Souza, 111 F.3d 694

19  (9th Cir. 1997); Walker v. Sumner, 917 F.2d 382 (9th Cir. 1989); Michenfelder v. Sumner, 860

20  F.2d 328 (9th Cir. 1988); Covino v. Patrissi, 967 F.2d 73 (2nd Cir. 1992).   The Ninth Circuit

21  noted that not all Turner four factors are relevant to each case.  Michenfelder v. Sumner, 860

22  F.2d 328 (9th Cir. 1988).   "For example, the second Turner factor - availability of other avenues

23  for exercising the right infringed upon – is much more meaningful in the First Amendment

24  context than the Fourth or Eighth, where the right is to be free from a particular wrong." Id. at

25  331 n. 1.

26         The case of Michenfelder v. Sumner involved a prison strip search policy that the Ninth

27  Circuit held was reasonably related to legitimate penological interests.  Michenfelder v. Sumner,

28  860 F.2d 328 (9th Cir. 1988).  In reaching this conclusion, the Court analyzed the search by

applying the balancing test set forth by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520, 99

S.Ct. 1861 (1979).   In <u>Bell</u>, the Supreme Court held:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

<u>Id</u>. at 559, 99 S.Ct. at 1884; <u>see</u>, <u>Michenfelder v. Sumner</u>, 860 F.3d 328 (9th Cir. 1988) (<u>Bell</u>

reasonableness standard applied to determine constitutionality of policy requiring visual body

searches); <u>Thompson v. Souza</u>, 111 F.3d 694 (9th Cir. 1997) (applying reasonableness test to strip

search and urinalysis); <u>Walker v. Sumner</u>, 917 F.2d 382 (9th Cir. 1990) (holding that the

reasonable test is the standard used to judge a Fourth amendment claim concerning HIV blood

testing).

　　In the instant case, Defendants present evidence that a gassing of Inmate Harnden

occurred on August 31, 2000.  (Merrifield Decl. at ¶¶ 7, 8, 11.)  Inmate Harnden requested that

tests for contagious disease be done on Plaintiff as Harnden alleged that Plaintiff was the person

who perpetrated the gassing.  (Merrifield Decl. at  ¶ 8, 9; Exh. 1, Evidence.)  The evidence shows

that inmate Harnden's face came into contact with the liquid substance believed to be mixed with

fecal matter and that the substance was found around both Plaintiff's and inmate Harnden's cells.

(Merrifield Decl., at ¶¶ 8, 11; Exh. 1, Evidence.)  Defendant Merrifield, a public health nurse

tasked with addressing all public health issues, especially as they pertain to contagious disease

such as tuberculosis, hepatitis and HIV, attempted to interview Plaintiff concerning the incident

but he refused to speak with her.  (Merrifield Decl. at ¶¶ 6, 12.)  Defendant Merrifield later

received a formal request from Inmate Harnden requesting that Plaintiff be tested for hepatitis

and HIV as Harnden had heard Plaintiff bragging about having gassed Harnden.  (Merrifield

Decl. at ¶ 14; Exh. 1, Evidence.)  Based on the above, Defendant Merrifield reviewed Plaintiff's

records to see if he had ever tested positive for a contagious disease, or if there were the risk

factors that might indicate a possible presence or transmission of a contagious disease.

(Merrifield Decl. at ¶¶ 14, 15.)  Defendant Merrifield then reported her findings, which included

the finding of some risk factors to Dr. Pendleton, who was in charge during the absence of the Chief Medical Officer, Defendant Dr. Yee. (Merrifield Decl. at ¶¶ 14, 15, 17.)  Following a review of the report, Dr. Pendleton found that their was a potential risk for infectious disease transmission of hepatitis from Plaintiff to Inmate Harnden as the bodily fluids and contaminates came into direct contact with the facial and mucous membranes of Harnden.  (Exh. 2, Evidence.) Dr. Pendleton therefore, issued a Memorandum ordering that Plaintiff be tested for hepatitis A, B and C on a voluntary or involuntary basis, pursuant to Penal Code § 4501.1. Id.  On October 3, 2000, Plaintiff was called to the health clinic and given a copy of the Memorandum to read. (Merrifield Decl. at ¶ 20;  Exh. 6, pp. 44:19-22; 45:3-24; Exh. 7.)  Plaintiff stated initially that he would not be tested without a court order. Id.  When it was explained that Plaintiff could be made to take the test involuntarily, he submitted to the hepatitis test. Id.  The test results indicated that Plaintiff was infected with hepatitis C at the time of the gassing incident. (Yee Decl. at ¶ 9; Exh. 3.)

Defendants argue that the testing of Plaintiff was reasonably related to the CDCR's legitimate interest in protecting the health of the inmate population and staff by preventing the spread of hepatitis, a highly contagious disease. (Motion for Summary Judgment at 11.)  In support of this interest, Defendants cite to California Penal Code Section 4501.1(c) as evidence of the governmental interest justified the test.   Upon a showing of probable cause and in the event of a "gassing," the Chief Medical Officer or his or her designee, is authorized to order testing for hepatitis or tuberculosis when he or she has deemed it medically necessary to protect the health of staff and to "ensure that further hepatitis or tuberculosis transmission does not occur." Cal.Pen.Code § 4501.1(c).

In his Complaint and deposition, Plaintiff adamantly complains that the use of Penal Code Section 4501.1 to justify the testing was improper. (Complaint at unnumbered pg. 4; Plaintiff's Deposition at 38-40.)  However, the Court fails to see how this fact suggests that the testing was done without a legitimate penological purpose.  As noted by Defendants, the CDCR is required to protect the health of the inmates as well as staff. (Motion at 11.)  The failure to protect an inmate who has been subjected to a "gassing" might itself rise to the level of a

constitutional violation.  Accordingly, the Court finds the testing of inmates who have "gassed" individuals is reasonably related to the penological goal of protecting the health of all persons present within the institution.

Plaintiff makes no allegation concerning the location of the testing and the Court can find no evidence in the record to suggest that the location where the test was conducted was unreasonable.   Accordingly, the Court finds Defendants have presented sufficient evidence demonstrating that the involuntary testing of Plaintiff was reasonably related to the legitimate penological interest in detecting and containing hepatitis C.   The burden therefore, shifts to Plaintiff to prove a disputed issue of fact exists.

In Michenfelder, the Ninth Circuit held that the prisoner "bears the burden of showing that the [prison] officials intentionally used exaggerated or excessive means to enforce security." Michenfelder v. Sumner, 860 F.3d at 333.  However here, Plaintiff has made no such allegation and further fails to present argument or evidence in any form that a disputed issue of fact exists. The Court finds the fact that Plaintiff was determined to have hepatitis C at the time of the testing supports the fact that the testing was not intended to harass Plaintiff but to prevent the spread of an infectious disease.  Accordingly,  the Court will recommend that summary judgment be granted in favor of Defendants on the Fourth Amendment Claim.

**5.  Privacy Claim**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.[5]  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  "While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional 'zone of privacy,' its existence is firmly established."  In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999).  "The constitutionally protected privacy interest in avoiding the disclosure of personal matters clearly encompasses medical information and its confidentiality," Norman-Bloodsaw v.

---

[5] The right to privacy has been found to fall under the protection of the Due Process Clause and/or the Fourth Amendment, which protects against unreasonable searches and seizures.  See Whalen v. Roe, 429 U.S. 589, 598 n.23 (1977); Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F3d 1260, 1269 (9th Cir. 1998);  Roe v. Sherry, 91 F.3d 1270, 1274 (9th Cir. 1996); Doe v. Attorney General of the United States, 941 F.2d 780, 795 (9th Cir. 1991).  Because the Complaint alleged no facts that implicate the Fourth Amendment on this claim, the court construes the claim to be one brought pursuant to the Due Process Clause.

1   Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998), and "information regarding an

2   individual's HIV-status or AIDS diagnosis . . . fall[s] with the ambit of the privacy protection

3   afforded medical information." Doe v. Attorney General of the United States, 941 F.2d 780, 796

4   (9th Cir. 1991).

5        Section 1983 "contains no state-of-mind requirement independent of that necessary to

6   state a violation of the underlying constitutional right." Daniels v. Williams, 474 U.S. 327, 330

7   (1986); Maddox v. City of Los Angeles, 792 F.2d 1408, 1414 (9th Cir. 1986).  Depending on the

8   right, mere negligence may or may not be enough to state a claim under section 1983.  Daniels,

9   474 U.S. at 330; Maddox, 792 F.2d at 1413.  The protections of the Due Process Clause are not

10  "triggered by lack of due care by prison officials " for such acts are "quite remote" from the

11  Fourteenth Amendment's purpose of redressing abuses of power of state officials.  Daniels v.

12  Williams, 474 U.S. 327, 332-33, 106 S.Ct. 662, 665 (1986.)   Thus, although some constitutional

13  provisions may be violated by mere lack of care, negligent conduct generally does not state a

14  claim under section 1983 for violation of the Due Process Clause of the Fourteenth Amendment.

15  Daniels, 474 U.S. at 334; Maddox, 792 F.2d at 1413.

16       In this case, Defendants present evidence in the form of a Declaration from Defendant

17  Merrifield that she did not disclose Plaintiff's hepatitis test results, or any other information

18  regarding Plaintiff's medical condition to Inmate Harnden or anyone else other than medical

19  staff.  (Merrifield Decl., ¶ 24.)

20       Although Plaintiff filed an Opposition, he again does not refute with evidence in any form

21  that Defendant Merrifield disclosed this information to a third party.[6]  Accordingly, the Court

22  finds Plaintiff has failed to meet his burden of demonstrating a genuine issue of fact exists on the

23  privacy claim and will recommend summary judgment be granted in favor of Defendants.

24       **6.  Qualified Immunity**

25

26          [6]The Court notes that Plaintiff's deposition revealed that Plaintiff was informed by an unidentified inmate
    that he, the unidentified inmate, was informed by inmate Harnden that "they" had given Harnden part of Plaintiff's
27  medical file.  (Plaintiff's Deposition at 58:12-13.)  Thus, it appears that Plaintiff's claim is based on an assumption
    that because the test was returned to Defendant Merrifield, it must have been she who disclosed the results to
28  Plaintiff.

1      Finding no disputed issue of fact exists warranting trial, the Court does not reach

2  Defendant's argument on qualified immunity.

3  **V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

4      As noted above, summary judgment is appropriate when it is demonstrated that there

5  exists no genuine issue as to any material fact and that the moving party is entitled to judgment as

6  a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

7  always bears the initial responsibility of informing the district court of the basis for its motion,

8  and identifying those portions of "the pleadings, depositions, answers to interrogatories, and

9  admissions on file, together with the affidavits, if any," which it believes demonstrate the

10 absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

11 It is the moving party's burden to establish that there exists no genuine issue of material fact and

12 that the moving party is entitled to judgment as a matter of law.  British Airways Board v. Boeing

13 Co., 585 F.2d 946, 951 (9th Cir. 1978).

14     Where "the moving party has the burden of proof, . . . his showing must be sufficient for

15 the court to hold that no reasonable trier of fact could find other than for the moving party."

16 Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (*quoting* W. Schwarzer, Summary

17 Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)).

18 Thus, on a summary judgment Motion, the moving party must demonstrate there is no triable

19 issue as to the matters alleged in its own pleadings.  Id.  This requires the moving party to

20 establish beyond controversy every essential element of its claim or defense.  Fontenot v. Upjohn

21 Co., 780 F.2d 1190, 1194 (5th Cir. 1986).  The moving party's evidence is judged by the same

22 standard of proof applicable at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

23     Pursuant to Local Rule 56-260(a), "[e]ach motion for summary judgment or summary

24 adjudication shall be accompanied by a 'Statement of Undisputed Facts' which shall enumerate

25 discretely each of the specific material facts relied upon in support of the motion and cite the

26 particular portions of any pleading, affidavit, deposition interrogatory answer, admission or other

27 document relied upon to establish that fact."  Local Rule 56-260(a).

28     The Court has reviewed Plaintiff's Motion and finds that it does not comply with the

1  requirements set forth in Local Rule 56-260(a).  Plaintiff's Motion, although accompanied by a

2  Statement of Undisputed Facts, does not cite to the evidence on which Plaintiff relies in support of

3  his assertion of no disputed issue of fact.  Local Rule 56-260(a).  Plaintiff provides the Court with

4  a list of numerous exhibits he later filed, however, other than the list, the Motion itself makes no

5  reference to evidence.  Plaintiff's contention that he is entitled to summary judgment is therefore,

6  purely conclusory.  The Court notes further that the basis of Plaintiff's entire Motion for Summary

7  Judgment concern facts which are *immaterial* to the resolution of the instant action.[7]   A moving

8  party's failure to cite to the evidence relied upon in support of each specific fact makes a

9  responding party's burden unnecessarily more difficult.   In fact-specific cases, the Court is

10  disinclined to overlook the failure to comply with the mandate of Local Rule 56-260(a).  The

11  responding party and the Court should be able to quickly ascertain what facts offered by Plaintiff

12  are to be contested and what evidence is relied upon in support of each fact.

13       The Court is cognizant of the fact that Plaintiff is a non-attorney proceeding pro se and is

14  incarcerated, however, all parties are required to comply with this rule, regardless of their status.

15  Plaintiff's Motion is not in compliance with this requirement and the Court will not expend its

16  valuable resources reviewing numerous Exhibits in an attempt to find support for facts that are not

17  material to the claims raised in the Complaint.  Accordingly, the Court will RECOMMEND that

18  Plaintiff's Motion for Summary Judgment be DENIED.

19  **VI. RECOMMENDATION**

20       The Court RECOMMENDS that the Plaintiff's Motion for Summary Judgment be

21  DENIED and the Defendant's Motion for Summary Judgment be GRANTED in full and the case

22  DISMISSED.

23       The Court further ORDERS that these Findings and Recommendations be submitted to the

24  United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C.

25

26       [7]For example, Plaintiff lists as an undisputed fact that Defendant Merrifield "lied" in response to his inmate

27  appeal, that Defendant Longoria accepted his neighbor's story over his, that a complete investigation into the actual "gassing" was not done, and that Defendant Yee said he could not appeal the Order to test.  However, none of the

28  facts listed are dispositive of whether Plaintiff's Eighth Amendment, Due Process or Fourth Amendment rights were violated.

§ 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    December 23, 2005           _____/s/ Lawrence J. O'Neill_____**
b9ed48                                  UNITED STATES MAGISTRATE JUDGE